**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DARRYL SMITH,<br><br>  Plaintiff.<br><br>  v.<br><br>UNITED AIRLINES, INC.,<br><br>  Defendant. | Case No. 25-cv-10097<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

NOW COMES Plaintiff, DARRYL SMITH, by and through his counsel, Jeffrey Law Office, LLC, and complains of Defendant UNITED AIRLINES, INC., and states as follows:

**JURY DEMAND**

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

**JURISDICTION & VENUE**

1. This action is brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et. Seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1 et seq., and 28 U.S.C. § 1331. This Court has jurisdiction of the state law IHRA claims pursuant to 28 U.S.C. § 1367 under the principles of supplemental jurisdiction, and such claims so relate to the federal claims as to form a part of the same case and controversy.

1

2. Venue is proper in this Court under 28 U.S.C. § 1391, as Defendant resides in this District, all of the events or omissions giving rise to these claims occurred in this District, and Plaintiff was hired, employed, terminated, and harmed by Defendant in this District.

**PARTIES**

3. Plaintiff, DARRYL SMITH ("Plaintiff"), was at all times relevant to this suit an African-American adult, residing in Chicago, Illinois. At all times relevant, Plaintiff was employed by Defendant in this District. Plaintiff was hired, employed, terminated, and harmed by Defendant in this District.

4. Defendant, United Airlines, Inc. ("Defendant"), is a corporation duly organized and doing business in Illinois, with its primary location at 233 South Wacker Drive, Chicago, Illinois 60606. It has obligations as an indemnitor of conduct of its employees and officers under at least 745 ILCS 10/2-301, *et seq.* and 745 ILCS 10/9-101, *et seq*. Defendant hired, employed, terminated, and harmed Plaintiff in this District. Defendant employs at least 15 full-time employees and therefore is a covered employer under Title VII and ADA.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

5. On or about March 22, 2024, Plaintiff timely filed Charges of Discrimination alleging race discrimination, disability discrimination, and retaliation with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 440-2024-05870 against Defendant.

6. On May 27, 2025, Plaintiff received the EEOC's Notice of Right to Sue.

7. On August 8, 2025, Plaintiff received a right to sue from IDHR (Charge No. 2024CR3743).

8. Therefore, Plaintiff's Complaint was filed in a timely manner; and Plaintiff has fully complied with all prerequisites to jurisdiction in this Court.

## UNDERLYING FACTS COMMON TO ALL COUNTS

9. On May 17, 1985, Plaintiff was hired by Defendant, United Airlines, Inc. On May 20, 2019, Plaintiff became Senior Manager of Crew Hotels and Transportation, and subsequently accepted position of Program Manager (Aviate) Pilot Strategy and Engagement in September 2022. Plaintiff remained in that role until his discriminatory and retaliatory termination on January 17, 2024.

10. Plaintiff's race is Black.

11. Plaintiff has disabilities, anxiety and depression, both protected by the ADA.

12. Defendant was apprised of Plaintiff's disabilities.

13. Plaintiff applied for two management positions for which he was well qualified. Both roles were awarded to white male candidates, Chad Melby and Jeff Moore, despite Plaintiff's qualifications.

14. When the Aviate program was created Plaintiff contacted the Senior Vice President of Flight Operations, Brian Quiqley, to express interest in the program. As a result, Plaintiff was issued a letter of recommendation by that leader and subsequently referred to Director Perry Lewis for further discussion.

15. Nevertheless, in his Senior Manager role, Plaintiff built out the department, created new processes, and consistently received positive performance reviews from leadership, including Managing Director Laura Mandile and Vice President Brian Stoller.

16. Following the onset of COVID-19, Plaintiff led reductions in force and transitioned his team to remote work successfully.

17. In or around 2020, Plaintiff was subjected to a retaliatory ethics & compliance investigation initiated by Supervisor Stephanie Carter after a disagreement regarding department procedures.

18. The investigation was based on a benign comment Plaintiff made to an employee and Hotel Operations Scheduler, Nikita Collins, regarding adjusting her camera during a virtual call. Plaintiff informed HR that the complaint was retaliatory, but the matter was nonetheless recorded as a partially substantiated incident in his personnel file.

19. Plaintiff later learned that Carter solicited witnesses to support her retaliatory complaint.

20. Plaintiff was subsequently stripped of managerial responsibilities and repeatedly assigned clerical duties, such as reconciling department credit card bills—tasks previously delegated to subordinates. Management even inquired about Plaintiff's pension benefits and 401k, suggesting that he consider retirement.

21. Plaintiff warned leadership, including Laura Mandile and Jacque Key, that the department was understaffed. These warnings were ignored. Staffing analyst Dennis Lawrence provided staffing data to both Mandile and Key, which was never approved by leadership.

22. Laura Mandile then instructed Plaintiff to change our Crew Hotels and Trans department schedule from work 5 days off 2 days, work 5 days off 3 rotation which is ideal for a operations department to a work 5 days off 2 days, work 5 days off 2 days which offered no flexibility for workers. When Plaintiff advised Laura Mandile of non-flexibility of schedule she stated "just because they want it, doesn't mean they get it;" this resulted in a toxic work environment and negative survey results.

23. Around 2022, Plaintiff applied for the Aviate Program Manager position. Despite strong qualifications and endorsements from senior leaders and multiple letters of recommendations fro United Airlines captains, the position was awarded to Cassie Outcalt, a white female.

24. Upon requesting feedback from Director Perry Lewis and Senior Manager Monica Frain, Plaintiff was told the successful candidate had more experience in the job area, but they never mentioned Plaintiff's lack of presentation abilities. Further, Plaintiff was not offered the Situation Task Action Result (S.T.A.R.) interview, as expected and traditionally given.

25. When the position reopened, Plaintiff contacted Defendant H.R. Representative Sonja Illic for guidance and to discuss the untenable and toxic work environment that he was currently experiencing.

26. Plaintiff was then contacted by H.R. Business Partners Natalie James and Kristina Hnitecki with a job offer signed by Managing Director Aviate - Mike Bonner and advised we will discuss job duties with Aviate leaders after signing.

27. In this new role, Plaintiff was tasked with engaging Historically Black Colleges and Universities (HBCUs). Despite performing well and earning praise from Director Perry Lewis, for working independently and without supervision for four months after accepting position and being successful in developing relationships with leaders at the assigned HBCUs, Plaintiff was excluded from Aviate Academy and industry events.

28. During this time, Monica Frain was training to upgrade to Captain.

29. Plaintiff's white peer, Program Manager Cassie Outcalt, was not subjected to these same requirements and enjoyed greater flexibility.

30. During this time, Plaintiff continued to experience severe depression and anxiety caused by Defendant's actions. Plaintiff's physician prescribed medication and certified Plaintiff for FMLA leave.

31. Rather than accommodate Plaintiff, Defendant increased harassment, excluding him from opportunities, and continued to isolate him professionally.

32. While participating in a business meeting with a minority institution, Plaintiff witnessed a biased and racially discriminatory statement made by Senior Manager Monica Frain (White), that was later fully substantiated by the Defendant's Ethics and Compliance Department.

33. Plaintiff addressed his concern and complaint regarding Senior Manager Monica Frain with her immediately after the meeting; however, the attempt was met with resistance and subsequent increased targeting and discriminatory acts.

34. At no time during Plaintiff's tenure as a Aviate – Program Manager did Plaintiff witness his counterpart Cassie Outcalt physically present and working a hybrid schedule, as Plaintiff was being directed to do by Monica Frain and Perry Lewis.

35. Plaintiff was advised by Monica Frain that he should clear his calendar and find someone to take his place when enacting his approved FMLA, as she interfered and stated she had worked from the hospital on a recent hospital stay.

36. Defendant's actions created an intolerable, hostile work environment and denied Plaintiff equal opportunity because of his race and disability, while also retaliating against him for protected activity.

37. Plaintiff contacted Perry Lewis for guidance and strategy on several different occasions and was advised that Monica Frain did not have a leadership or direct-report background.

38. In Plaintiff's yearly compensation meeting with Perry Lewis and Monica Frain, he was advised that he would receive a 1.5% raise in spite the acknowledgement by Perry Lewis that Plaintiff had been working independently and with minimal supervision and guidance for the first several months as an Aviate – Program Manager. Perry Lewis stated that Plaintiff should be happy with the current salary, as it is standard practice to receive a lump sum raise if the employee is at the top of the salary grade.

39. In a meeting on May 16, 2023, with Perry Lewis, Monica Frain, and H.R. Business Partner Natalie James, to discuss strategy and performance, Natalie James reiterated that she advised Plaintiff in the job offer meeting that job duties and responsibilities would be modified to his extensive background and skillset. Also, Perry Lewis stated again that the idea of having direct reports was not considered when Monica Frain accepted the Sr. Manager position.

40. The meeting on May 16, 2023, was followed up with an "on-track" rating for Plaintiff's mid-year review.

41. Monica Frain also stated that one of the reasons for the meeting was that Plaintiff had been made to feel targeted by her, at that point H.R. Business Partner Natalie James gave him options given by United Airlines policies to follow if he did feel targeted.

42. Shortly after the aforementioned meeting, Natalie James accepted another position and subsequently no announcement was given for her replacement.

43. Plaintiff was contacted by Ethics & Compliance Investigator – Brent Houltan concerning his witness to a complaint filed by Recruiter – Yvonne Leggon in which Brent Houltran suggested that Plaintiff require an individual investigation for claims of harassment and discrimination.

44. Plaintiff was later advised by Brent Houltran that Jonathan Unander would be assisting in the filed Ethis & Compliance complaints, as the complaints complexity and overall workload was large at the time.

45. Plaintiff was later advised by Jonathan Unander that the claim of harassment and discrimination had been fully substantiated; then Plaintiff was contacted by Sr Manager – Monique Morris and Jonathan Unander advising that the substantiated claim was being changed to a violation of company policy.

46. Shortly thereafter, interestingly, Jonathan Unander's employment with Defendant ended.

47. Plaintiff then received information from Brent Houltran that his additional claims were found to be unsubstantiated.

48. It was later determined H.R. Director – Leia Devita would assume Natalie James former duties in a meeting with Monica Frain and Perry Lewis to discuss performance.

49. A few months after the "on-track" performance rating, Plaintiff was issued a PIP that contained "subjective" and "contradictory" information.

50. Plaintiff then advised H.R. Business Partner Director – Leia Devita that United Airlines policy for issuing PIPs was not being followed according to a long-standing policy of issuing formal verbal and written warnings prior to issuing Letters of Expectations or PIPs. Leia Devita then claimed Plaintiff's information that was being referenced was outdated, although it was obtained o United Airlines website.

51. Plaintiff reached out to H.R. Business Partners at United Airlines to verify the PIP process and information and was advised multiple times that the proper process was not being followed and the information contained in the PIP was subjective.

8

52. Plaintiff then applied for the open position of Sr. Manager – Inflight Scheduling and was advised by Director- Jillian Fox that she would not interview him due to her having too many interviewees and that Plaintiff didn't have recent experience, despite none of these reasons were stated in the job posting and in spite of the mentor relationship previously established between the Plaintiff and Director-Jillian Fox. Eventually, Jeff Moore (White) filled the position.

53. Plaintiff then reached out to several executives at United Airlines to seek guidance and counsel as to how best to address the racist memes, statements and harassment that the Plaintiff was experiencing, along with the overall toxic work environment. Plaintiff was consistently advised to contact the Ethics & Compliance Department with his concerns.

54. Because of Plaintiff's race and his disability, Plaintiff was subjected to disparate treatment and discrimination, including being overlooked for promotions and being terminated.

55. Because Plaintiff reported discrimination and retaliation, exercising a right and protected activity, he was subjected to escalated disparate treatment, increased harassment, and terminated.

**COUNT I – RACE DISCRIMINATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, et. Seq**

56. Plaintiff realleges and incorporates by reference and all facts and allegations in all other paragraphs of Plaintiff's Complaint as if fully set forth herein.

57. Plaintiff, Black, is a member of a protected class.

58. Plaintiff was qualified to perform his job and satisfactorily performed his duties and responsibilities within Defendant's legitimate expectations.

59. Plaintiff apprised Defendant of his race, Black.

60. Defendant discriminated against Plaintiff because of his race by refusing to accommodate his desire of a safe and free non-discriminatory work place and for harassing and

9

discriminating against him for the same, creating a hostile work environment, and would not have done so had Plaintiff not been Black and everything else having been the same.

61. Other White employees subjected to the same work environment, policies, procedures, and guidelines as Plaintiff were not discriminated against as Defendant accommodated those employees' safe and free non-discriminatory workplace rights. This unlawful discrimination directly impacted Plaintiff's terms and conditions of employment with Defendant.

62. Plaintiff's race was a substantial and motivating factor in Defendant's decision to discriminate against Plaintiff. Defendant would not have discriminated against Plaintiff absent consideration of Plaintiff's race.

63. Defendant's discrimination constitutes unlawful discrimination in direct violation of Title VII.

WHEREFORE, Plaintiff, DARRYL SMITH, respectfully requests that this Court enter judgment in his favor and against Defendant as follows:

    A.    Declare, decree, and adjudge that Defendant violated Title VII;

    B.    Grant an injunction against Defendant from violating Title VII and to protect other employees from such violations;

    C.    Enter appropriate injunctive relief awarding the Plaintiff the back pay, front pay, wages, employee benefits, and other compensation that he was denied or lost and reinstating him to the position he previously held;

    D.    Order Defendant to pay the Plaintiff compensatory damages;

    E.    Award the Plaintiff pre-judgment and post-judgment interest to which he is entitled;

    F.    Award the Plaintiff his reasonable attorney's fees and costs; and

G. Award such other and further relief as it is just and appropriate, including nominal damages.

**COUNT II – RETALIATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, et. Seq**

64. Plaintiff realleges and incorporates by reference and all facts and allegations in all other paragraphs of Plaintiff's Complaint as if fully set forth herein.

65. It is an unlawful employment practice for an employer to fail or refuse to hire, refuse to promote, or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, for engaging in a protected activity.

66. Plaintiff, being Black, is a member of a protected class under Title VII.

67. Plaintiff engaged in a Title VII protected activity by reporting discriminatory acts by Defendant.

68. Defendant knowingly and intentionally engaged in harassment of Plaintiff by creating an intolerable, hostile work environment for Plaintiff, including refusing to promote him due to discriminatory and retaliatory reasons.

69. Defendant's decision to discriminate and retaliate against Plaintiff was solely motivated by the fact that he reported discrimination.

70. Defendant would not have retaliated against Plaintiff had he not reported the discrimination. The retaliation against Plaintiff directly impacted his terms and conditions of employment with Defendant.

71. Defendant's retaliation against Plaintiff constitutes unlawful discrimination in direct violation of Title VII.

72. As a direct and proximate result of Defendant's unlawful and willful violations, Plaintiff has suffered economic and non-economic damages, including but not limited to loss of wages, emotional distress, damaged reputation, humiliation, anguish and outrage.

WHEREFORE, Plaintiff, DARRYL SMITH, respectfully requests that this Court enter judgment in his favor and against Defendant as follows:

A. Declare, decree, and adjudge that Defendant violated Title VII;

B. Grant an injunction against Defendant from violating Title VII and to protect other employees from such violations;

C. Enter appropriate injunctive relief awarding the Plaintiff the back pay, front pay, wages, employee benefits, and other compensation that he was denied or lost and reinstating him to the position he previously held;

D. Order Defendant to pay the Plaintiff compensatory damages;

E. Award the Plaintiff pre-judgment and post-judgment interest to which he is entitled;

F. Award the Plaintiff his reasonable attorney's fees and costs; and

G. Award such other and further relief as it is just and appropriate, including nominal damages.

## COUNT III —
## DISCRIMINATION / INTERFERENCE / FAILURE TO ACCOMMODATE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, et. seq.

73. Plaintiff incorporates by reference and restates herein by express reference all other paragraphs of this Complaint.

74. Defendant is an employer, as defined by the ADA.

75. Plaintiff has been diagnosed with anxiety and depression, disabilities protected by the ADA.

76. Plaintiff satisfied the prerequisites of, and was qualified to perform, the essential functions of his job with or without reasonable accommodation.

77. The ADA prohibits discrimination against a qualified individual with a disability because of the disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. See 42 U.S.C. § 12112(a).

78. Nevertheless, Defendant discriminated against Plaintiff because he suffered from the aforementioned disabilities.

79. Similarly situated employees without a disability were treated more favorably by Defendant.

80. Therefore, Plaintiff suffered an adverse employment action by Defendant because of his disability.

81. Defendant's discrimination constitutes unlawful discrimination in direct violation of ADA.

WHEREFORE, Plaintiff, DARRYL SMITH, respectfully requests that this Court enter judgment in his favor and against the Defendant as follows:

A. Declare, decree, and adjudge that the Defendant violated ADA;

B. Grant an injunction against the Defendant from violating ADA and to protect other employees with disabilities from such Civil Rights violations;

C. Enter appropriate injunctive relief awarding the Plaintiff the back pay, front pay, wages, employee benefits, and other compensation that he was denied or lost and reinstating him to the position he previously held;

D. Order the Defendant to pay the Plaintiff compensatory and punitive damages;

E.  Award the Plaintiff pre-judgment and post-judgment interest to which he is entitled;

F.  Award the Plaintiff his reasonable attorney's fees and costs; and

G.  Award such other and further relief as it is just and appropriate, including nominal damages.

## COUNT IV – RETALIATION
## AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, et. seq.

82. Plaintiff incorporates by reference and restates herein by express reference all other paragraphs of this Complaint.

83. It is unlawful and a civil rights violation for an employer to retaliate against an employee because the employee has opposed that which they reasonably and in good faith believes to be unlawful discrimination, for reporting discrimination, opposing an employer's discriminatory practices or because the employee has made a charge, filed a complaint or participated in an investigation or legal action related to discrimination under ADA.

84. Plaintiff had engaged in a protected activity under ADA after having reported his disability and requested reasonable accommodation; and later reported discrimination and retaliation regarding the same.

85. Plaintiff sought to protect himself against the unlawful discrimination based upon having previously reported the disability and requested reasonable accommodation.

86. Defendant's decision to discriminate against Plaintiff was motivated by an intent to retaliate against him because of his protected class and conduct.

87. Defendant would not have discriminated against Plaintiff had he not previously engaged in protected activity and everything else being the same.

88. Other Defendant employees subjected to the same work environment, policies, procedures, and guidelines as Plaintiff were not discriminated against based upon engaging in the

same protected activities. This unlawful discrimination and treatment of Plaintiff directly impacted his terms and conditions of employment with Defendant.

89. As a direct and proximate result of Defendant's violations on the basis of retaliation, a result of the unlawful and willful acts complained of herein, Plaintiff has suffered economic and non-economic damages.

90. Defendant's discrimination constitutes unlawful discrimination in direct violation of ADA.

WHEREFORE, Plaintiff, DARRYL SMITH, respectfully requests that this Court enter judgment in his favor and against the Defendant as follows:

    A.    Declare, decree, and adjudge that the Defendant violated ADA;

    B.    Grant an injunction against the Defendant from violating ADA and to protect other employees from such violations;

    C.    Enter appropriate injunctive relief awarding the Plaintiff the back pay, front pay, wages, employee benefits, and other compensation that he was denied or lost and reinstating him to the position he previously held;

    D.    Order the Defendant to pay the Plaintiff compensatory damages;

    E.    Award the Plaintiff pre-judgment and post-judgment interest to which he is entitled;

    F.    Award the Plaintiff his reasonable attorney's fees and costs; and

    G.    Award such other and further relief as it is just and appropriate, including nominal damages.

## COUNT V – RACE DISCRIMINATION
## ILLINOIS HUMAN RIGHTS ACT

91. Plaintiff realleges and incorporates by reference and all facts and allegations in all other paragraphs of Plaintiff's Complaint as if fully set forth herein.

92. The IHRA prohibits discrimination in employment on the basis of a person's race. The IHRA applies to prohibit against discrimination to all units of State and local government in Illinois and to all private employers and labor organizations.

93. It is the public policy of the State of Illinois that employees have the freedom from unlawful discrimination. The IHRA secures for all individuals within Illinois "the freedom from discrimination against any individual because of his or her race, color, religion, sex, national origin, ancestry, age, order of protection status, marital status, physical or mental disability, military status, sexual orientation, or unfavorable discharge from military service in connection with employment, real estate transaction, access to financial credit, and the availability of public accommodations." 775 ILCS 5/2-102.

94. The IHRA defines "unlawful discrimination" to mean discrimination against a person because of his or her . . . race, color, et al. as those terms as defined in this Section. *Id*. at 5/2-102(Q).

95. Plaintiff, being Black, is a member of a protected class.

96. Plaintiff was qualified to perform his job and satisfactorily performed his duties and responsibilities within Defendant's legitimate expectations.

97. Plaintiff apprised Defendant of his race, Black.

98. Defendant discriminated against Plaintiff because of his race by refusing to accommodate his desire of a safe and free non-discriminatory work place and for harassing and

16

discriminating against him for the same and would not have done so had Plaintiff not been Black and everything else having been the same.

99. White employees subjected to the same work environment, policies, procedures, and guidelines as Plaintiff were not discriminated against as Defendant accommodated those employees' safe and free non-discriminatory workplace rights. This unlawful discrimination directly impacted Plaintiff's terms and conditions of employment with Defendant.

100. Plaintiff's race was a substantial and motivating factor in Defendant's decision to discriminate against Plaintiff. Defendant would not have discriminated against Plaintiff absent consideration of Plaintiff's race.

101. Defendant's discrimination constitutes unlawful discrimination in direct violation of the IHRA.

WHEREFORE, Plaintiff, DARRYL SMITH, respectfully requests that this Court enter judgment in his favor and against the Defendant as follows:

    A.    Declare, decree, and adjudge that Defendant violated Illinois Human Rights Act;

    B.    Grant an injunction against Defendant from violating Illinois Human Rights Act and to protect other employees of a different race from such Civil Rights violations;

    C.    Enter appropriate injunctive relief awarding the Plaintiff the back pay, front pay, wages, employee benefits, and other compensation that he was denied or lost and reinstating him to the position he previously held;

    D.    Order the Defendant to pay the Plaintiff compensatory damages;

    E.    Award the Plaintiff pre-judgment and post-judgment interest to which he is entitled;

    F.    Award the Plaintiff his reasonable attorney's fees and costs; and

G. Award such other and further relief as it is just and appropriate, including nominal damages.

## COUNT VI – RETALIATORY DISCHARGE
## ILLINOIS HUMAN RIGHTS ACT

102. Plaintiff realleges and incorporates by reference and all facts and allegations in all other paragraphs of Plaintiff's Complaint as if fully set forth herein.

103. It is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, for engaging in a protected activity.

104. Plaintiff, being Black, is a member of a protected class under the IHRA.

105. Plaintiff engaged in an IHRA protected activity by reporting discriminatory acts by Defendant.

106. Defendant knowingly and intentionally engaged in harassment of Plaintiff by creating an intolerable, hostile work environment for Plaintiff; and ultimately terminated Plaintiff on January 17, 2024.

107. Defendant's decision to discriminate against Plaintiff was solely motivated by the fact that he reported discrimination and retaliation.

108. Defendant would not have discharged Plaintiff had he not reported the discrimination and retaliation. The discharge of Plaintiff directly impacted his terms and conditions of employment with Defendant.

109. Defendant's retaliatory discharge of Plaintiff constitutes unlawful discrimination in direct violation of the IHRA.

110. As a direct and proximate result of Defendant's unlawful and willful violations on the basis of retaliatory discharge, Plaintiff has suffered economic and non-economic damages, including but not limited to loss of wages, emotional distress, humiliation, anguish and outrage.

WHEREFORE, Plaintiff, DARRYL SMITH, respectfully requests that this Court enter judgment in his favor and against Defendant as follows:

A. Declare, decree, and adjudge that Defendant violated the IHRA;

B. Grant an injunction against Defendant from violating the IHRA and to protect other employees from such violations;

C. Enter appropriate injunctive relief awarding the Plaintiff the back pay, front pay, wages, employee benefits, and other compensation that he was denied or lost and reinstating him to the position he previously held;

D. Order Defendant to pay the Plaintiff compensatory damages;

E. Award the Plaintiff pre-judgment and post-judgment interest to which he is entitled;

F. Award the Plaintiff his reasonable attorney's fees and costs; and

G. Award such other and further relief as it is just and appropriate, including nominal damages.

Dated: August 24, 2025

                                                                            /s   Antonio L. Jeffrey
                                                                                    Attorney for Plaintiff

JEFFREY LAW OFFICE, LLC
Antonio L. Jeffrey (#6308345)
1301 W. 22nd Street, Suite 308
Oak Brook, Illinois 60523
(312) 583-7072
(312) 583-0888 (fax)
ajeffrey@jeffreylawoffice.com